The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning, counsel. We're on the record in consolidated cases, all bearing the initial numbers 4-20. Those cases are 0-121, 0-135, 0-142, 0-386, 0-387, and 0-388. Carle Foundation v. Department of Revenue et al. At this time, I'd ask for counsel to state their appearances and also please identify your clients. Let's start with the appellants. This is Caleb Rush. I represent the Illinois Department of Revenue and its director. This is Frederick Grosser. I represent the City of Urbana, Cunningham Township, and the Cunningham Township Assessor. This is Joel Fletcher. I represent Champaign County, the Champaign County Board of Review, and the Champaign County Treasurer and Supervisor of Assessment. Good morning. Stephen Flom on behalf of the Carle Foundation. All right. Thank you, counsel. It's my understanding that for the appellants, the argument will be split 10 minutes apiece for the attorneys. Mr. Flom will then have his appellee cross-appellant 30 minutes argument. Then for rebuttal, Mr. Fletcher will proceed first with four minutes, Mr. Grosser with three minutes, and Mr. Rush with three minutes. Is there any disagreement as to what I just stated? No, for the county defendant. All right. I believe I have 10 minutes at the end, then, for the cross-appellant. You would, yes. Thank you. All right. Thank you. Mr. Rush, it's my understanding that you will begin argument. Yes, Your Honor. May it please the court, I'm Assistant Attorney General Caleb Rush, representing the Department of Revenue and its director. We are asking this court to reverse the charitable tax exemptions awarded by the Circuit Court to the Carle Foundation for 2005 through 2011, and otherwise to affirm the Circuit Court's judgment. I intend to focus on the basic legal framework and how it shows that Carle did not meet the statutory or constitutional requirements for a charitable tax exemption. Counsel for Champaign County and Cunningham Township and the City of Urbana will address aspects of those analyses in more detail, as well as Carle's cross-appeal. On the constitutional issue, this case presents very different visions of what charity means. Charity must be a gift, not providing services for payment. This principle has not been altered by the enactment of Section 1586 for hospital property tax exemptions. But since this court does not need to reach the constitutional issue, I will start by discussing Carle's failure to meet basic legal requirements under the statute, Section 1586, unless the court prefers otherwise. Carle has failed to meet two basic statutory requirements for the exemptions that it claims, which are relying solely on Section 1586. For one thing, it did not file applications as required by the statute, and for another, the statute does not apply retroactively to cover Carle's exemption claims. The requirement for filing administrative applications is clearly spelled out in the statute. It requires administrative applications filed under Section 15-5 or possibly in the alternative affidavits, both with detailed substantive content. The circuit court erred when it said that this requirement was immaterial. The circuit court recognized that an application might be required only for the first time, but it failed to recognize that in that scenario, still a detailed affidavit would be required. Carle has not filed or pursued the administrative process as required by Section 1586 for any of the claimed exemption years. Carle also has apparently abandoned its argument that the mock-up administrative applications that it submitted at the trial court, which were never administratively filed, not signed by the CEO, not even reviewed by the CEO until he was on the stands testifying as a witness, Carle has apparently abandoned its argument that those somehow satisfied this application requirement. Mr. Rush, if 1586 does not apply to Carle, or I guess in your, well, to Carle in this case, what is the standard under which the statutory question is answered? The standard of review would be de novo. It's a matter of fact. I'm sorry, bad question. What is the standard by which their application for exemption is examined in a judicial proceeding? Well, again, I would say, first of all, their exemption claims fail to meet basic statutory requirements. So that would be, in this court, a de novo standard of review. And I'm sorry, perhaps I'm not understanding. Probably I'm not expressing it well, but you're suggesting that because they didn't apply at the administrative level, that that means they're not, they didn't file an application and they're not an applicant under 1586. Is that correct? They didn't file an application, so they haven't met the requirements of Section 1586. Okay. What standards apply to an applicant seeking the judicial remedy under 2325? What substantive standard applies to that application? So Section 2325E does not create a judicial remedy. It lifts a bar to a previously existing judicial remedy. And as recognized in this court's first decision in this series of appeals, which we call Carl I, as recognized in that decision, that cause of action would be a common law cause of action for a tax injunction. So what standards apply in that substantive, what substantive standards apply in that court proceeding, it would be the substantive requirements of whatever statute the taxpayer is claiming under, and, of course, also the substantive requirements for charitable tax exemption under the Illinois Constitution. If I've answered the court's question. Well, I think you have, but let me follow up. Why would we interpret an applicant or an application as being only an administrative application? Because that's what's spelled out in Section 1586. Section 23-25E doesn't create a new form of action. It doesn't create a new remedy. It doesn't override any requirements of any other statute. It only lifts a bar provided in Subdivision A, Section 23-25A. So why does it require only administrative applications? Because that's what Section 1586 says in very plain text. And any party proceeding with an exemption claim under 23-25E must still meet the requirements of the statute that it's claiming under, and Carl has chosen to rely entirely on Section 1586 and under the Constitution. And where it says in definitions a hospital applicant means a hospital owner that files an application pursuant to 15-5 and this section. What do those words mean, and this section? It says and this section because later on it might be Subdivision H, but I apologize if I'm recalling the wrong letter. It spells out additional requirements. So it's got to be an administrative application. That's what Section 15-5 means, but there's additional very specific requirements for this type of application under Section 1586. Now the term application figures prominently in Carl's second failure to meet the requirements of Section 1586, and that is that the statute doesn't apply retroactively. It's a 2012 statute. It doesn't apply retroactively. Can I just stop you there? Retroactivity is very important and I want to get to it, but how is a judge in a judicial proceeding, are we applying a completely different standard of exemption than would apply in an administrative proceeding? Have we cut these two in half now? I don't think that it's a completely different standard. I think that in an administrative proceeding under Section 1586, the department would also be looking to whether the applicant had satisfied the requirements of the statute and the requirements of the Constitution. All right, go ahead and do retroactivity. So on retroactivity, real briefly, the retroactivity of the statute is explicitly spelled out in Section 90, which is part of the overall statute that was passed when Section 1586 was created. It applies to certain department decisions and it applies to certain applications, meaning applications that are before the department. It doesn't say that though, right? It says all applications for property tax exemptions. So you're narrowing that more than what the words suggest. I don't think so. And here's why. First of all, that statute itself talks about applications not yet decided by the department, applications for which department decisions were not yet final and appealable. If we only looked at Section 90, it would be clear we're talking about administrative applications. But we don't only look at Section 90. Section 90 is part of a scheme that was all in the same public act passed by the legislature, including Section 1586. And 1586 is very specific about what applications means. Then if I may briefly move on to the constitutional issue, the real problem here is that Carl has failed to meet its fundamental burden to clearly show that it exclusively or primarily used this property for charity. Instead, the evidence showed that between 96 and 99% of its activity at the property was providing medical services for payments. I see that my time is up. I'm going to, because time is short on this appeal, we will rest on our brief, or perhaps I'll be able to address in rebuttal, other constitutional issues, and I'll turn things over to fellow defense counsel. Okay, thank you, Mr. Rush. Mr. Gross. May I please, the court counsel. I'll address several issues until I run out of time. The first thing I want to talk about is prejudgment interest. Carl has cited several times the case of Shell Oil Company. Are you responding to Carl's appeal? Well, prejudgment interest is, and we address it in our briefs. As a cross-athlete, correct? Yes. Well, if I may not address that, then I will move on. Well, you may, counsel. This is your time, so you may proceed. Thank you, Your Honor. The Shell Oil Company case is cited for the proposition that there can be equitable interest. In the Shell Oil case, it was not a property tax, and it was not under the property tax code. It was a retailer's occupation tax, sometimes called a sales tax, and that was, as I said, not under the property tax code. What the court did in Shell Oil is it awarded interest, but it awarded interest based upon the Protest Monies Act, which then was 127 Illinois V. Statute 172, now 30 ILCS 231 and 2A. There was a statute that specifically authorized the interest. The court commented by way of dicta that it may be possible to award equitable interest, but that's not what happened in the case, and that is not what the case stands for. With respect to the comments about 2325E, I think the real obstacle that they have here for seeking retroactivity is that under 2325E, they must be seeking an exemption on similar grounds to an exemption they already have. They had an exemption under 1535 in prior years. They filed their lawsuit based upon 1535. Then they added 1586 when 1586 was enacted, and that was entirely different. They then withdrew their 1565 claims right before trial, so they are now in court on their 1586 claim, but it cannot be based upon 2325E because it is not a similar ground for exemption. I want to make one comment on the Millennium Park case, which has been cited to show no authority by the assessor to value this property. Let's not confuse levying a tax with valuing. The assessor values, doesn't levy taxes. The only issue in that case was whether the interest given by the park district to the vendor was a lease or a license. If a license, there are no tax implications. If a lease, it is taxable to the vendor, no matter what the status is with respect to the unit of government. Now, going to the constitutional topic, this court in Carl II applied the valid rules test for facial constitutionality. It found the no set of circumstances test to be not applicable and not even very workable. Carl II is vacated, so it is no longer precedent. The Supreme Court has not said that there is an exception to the facial challenge of the no set of circumstances. Why would this court be the one to tell the Supreme Court it's test is wrong? I filed an amicus brief in the Supreme Court asking him to use the valid rule test. The response was they can't because Oswald didn't raise it. They couldn't consider an issue raised by an amicus. However, they said that is an issue for another case and another day. I say this is that case and that they have invited you to consider it. Mr. Gossard, wouldn't it be more accurate to say you have to raise it here to preserve it so you can ask the Supreme Court to fine-tune its facial challenge standard? It's still an issue for us to say the standard is different than what the Supreme Court said it was. You're correct, Your Honor. I am preserving that for when this case gets to the Supreme Court. I'm just preserving it to the extent that I can. Thank you. Thank you, Mr. Gossard. I think that even if you choose not to take that invitation, I gather that's what's going to happen, Carl still would not qualify in this case for the exemption under 1586. Because they did this in 2012 right after 1586 was enacted. However, the Oswald case did not come along until 2018, whereby they said that the statute as written won't work. And they added language or said we have to read this into it, which is the language of Article 9, Section 6 of the Illinois Constitution. The PTAC 300H form that the Department of Revenue used at that time included nothing related to the requirements of the Constitution. And I'm talking about primarily the exclusive are primarily charitable. There's no question, but they're about 2.5% charitable. But the decision in this case by the trial court occurred after Oswald and in awareness of Oswald. So what's the issue? The issue is that they still never met the requirements. I don't recall the trial judge saying that they have met the requirement of mostly what the trial judge said was they got to meet a requirement of 1%. That's lower than they are. So if you're viewing what the trial judge did and why the trial judge did it, then it makes an even stronger case for the proposition that they don't meet the requirements of 1586 as modified by the Illinois Supreme Court. That's all I have, unless there are other questions. I don't see any other questions. Thank you, Mr. Grosser. Mr. Fletcher. Please, this is Joel Fletcher for the County Defendant. I want to start by reiterating a couple of points that have already been met. I do think that under Section 15-86, it is clear that this type of exemption cannot be raised in the first instance in the circuit court. The legislature chose with Section 15-86, B6, and B8 to require this type of exemption to be raised in the first instance before the Department of Revenue. This is not a circumstance where there are two standards of review. There is no standard for this type of exemption. This type of exemption cannot exist in the first instance on the circuit court. The vacated decision in Part 2 reached a contrary result. I respectfully submit a very creative interpretation of Section 23-25e, which incorporated the comparable year under that statute into the court's analysis for the year of the issue. In short, the court would compare the result in 2012, the comparable year, with the year at issue here, and would grant the exemption only if on the facts the exemption claims were substantially the same and there were no material differences. As to Section 15-86, under subsection I, that section reads, nothing in this section shall be construed to limit the ability of otherwise eligible hospitals, it goes on, to obtain or maintain property tax exemptions pursuant to the provision to the property tax codes other than this section. If nothing in that section shall be construed that way, can it be read to say that nothing can be construed to limit the ability of otherwise eligible hospitals to obtain or maintain property tax exemptions pursuant to 23-25 subsection E? Well, I don't think 23-25e creates a cause of action. I agree with Mr. Rush that it only lifts the bar of exhaustion of administrative remedy. So I don't think subsection I would let plaintiffs establish an exemption under 23-25e. I think what subsection I is designed to do is to allow hospitals to continue to raise exemptions under Section 15-65, a substantive standard that plaintiffs abandon here. So I just want to understand, I hear what you're saying about 15-86 being a new standard and that the judicial standard, the judicial action under 23-25 is not a new cause of action. But in that judicial action, isn't it still looking to the statutory standard? Well, I submit that it is looking at it to determine whether it's on talkable grounds because that's a threshold question that must be examined. But that doesn't mean that it's part of the substantive standard for exemption when you're looking at the subject year. They need to check that box, but once that box is checked, they need to independently establish their right to exemption for the subject year. But assuming the court is correct, I still don't see how that brings us within 15-86d6 and d8 because under 15-86h, the claims still need to be brought before the department in the first instance. What specifically in the statute supports that conclusion? Well, if one looks at 15-86h, it requires an administrative application to be submitted before the department. If one looks at 15-86d6 and d8, it requires that the exemption claim be brought pursuant to section 15-5 and this section. Section 15-5 is the administrative process. Well, does it say must be brought? Well, it incorporates those definitions into I believe it's 15-86. 15-86d6 and d8. Right. It says if you're applying pursuant to 15-5, you've got to use the department's form. This seems a pretty unremarkable subsection. Well, it defines the right to exemption in 15-86d in terms of possible applicant and subject property and provides that exemption only to those terms, which incorporates the definition of the administrative form. Big picture though. The legislature wanted to simplify this process and make one specific to hospitals. Aren't we undermining that if we don't apply the same substantive standard of 15-86, regardless of whether the exemption is sought in an application to the department versus a judicial proceeding? I would submit the legislature sought to simplify this process by requiring the fact-finding in a hospital exemption application such as this to be made before an administrative law judge in front of the department. The trial court in this case, I think fairly bemoaned the absence of standards here in the case law for this type of exemption claim. I submit that the legislature addressed that problem by requiring the department to make the fact-finding to the person. I think that's somewhat of a circular argument though, right? The reason that you think it's got to be before the department is because the legislature required the department to do fact-finding. I think you're still just describing the administrative route. Respectfully, I think that that policy of relying on deference to the administrative agency is why we have standards of administrative review. That's why we have a department of revenue. The legislature wanted to limit this type of claim to those brought before the department so the department would have the first say in fact-finding. Except we know that there is a judicial avenue that's been opened as well. The judicial avenue, I submit, has been foreclosed in this case by D6 and D8. Even if the court were to allow this to come through and consider the comparable year requirement under 23-25E, plaintiff has clearly failed that requirement here. I'm not going to do a deep dive on the record, it's in the brief, but I would note that their charity care at cost doubled from 2004 to 2006, doubled again from 2006 to 2008, doubled again by 2011, and went up another $10 million before 2012. This period, plaintiff adopted several of the charity care practices that it now claims is innovative. I would also note that its rate of approvals went way up. I believe between 2009 and 2010, its charity care approval rate went from roughly 30-something percent to roughly 60-something percent. These are not uncomparable grounds. They're certainly not on substantially the same ground as the vacated decision that Carl II would require. Isn't it the same and more of the same? Well, it's more... Carl II would require this court saying, why would the department make a different decision earlier? If they're doing worse earlier, they might not make the same decision. I think I agree with Mr. Grosser that this is all somewhat academic because we're imputing decision-making to the department that it could not have made from 2004 to 2011 because 15-86 didn't exist then. And I agree with Mr. Grosser that we're also setting an odd benchmark of 2012. It does matter that Oswald was not in effect in 2012 because that's the benchmark the court is looking at. The court is looking at 2012 and saying, well, why did the department grant the exemption then? Well, one reason is because it was not clear at that time that Plaintiff had established under Oswald, which came out in 2018, that it met the constitutional standard as part of its burden of proof. There's no showing on this record that the department ever held Plaintiff to its rigorous standard of proof in 2012, which is the benchmark that the trial court is using. I would, so I think in terms of the scalable year analysis, I do think that the merger in 2010 between Carl Foundation and Carl Clinic is critical. Their claims to partial exemptions became claims to total exemptions. Their outpatients tripled, and the barriers to care reflected in Carl Clinic aggressive collection practices disappeared overnight. So I do not think, and these are issues which I believe Lawrence Duke testified would make a difference to her analysis in 2012. So I don't see how Plaintiff establishes the comparable year requirement. My time is running short. I'm going to very briefly highlight a couple of things. We did highlight the issue of repackaging bad debt in the breach. I don't think that meets the statutory requirement under Section 15-86 that Plaintiff relies upon for each of its claims. Does that reach the constitutional issue? Certainly not with respect to $4.8 million of repackaged bad debt by Carl Clinic that cannot be pursuant to Plaintiff's financial assistance policy. At its core, does it reach the constitutional issue? It requires some comparison between charitable use and total use. It requires a focus on the parcel or its functional equivalent. Numbers are relevant to that analysis, and mere statements of intent, which is making medical care available to all without regard to the ability to pay, are not enough. That's clear from midwest palliative care. It's clear from Corson itself, which focuses on actual use, not statements of intent. My time here is brief. I've got about 15 seconds. If I can answer a question, I'd love to. But otherwise, I'll recede my time and address Mr. Klum's comments in the following. Thank you for your time. Thank you, counsel. I'll just note that ordinarily, I would be seeing a visual indicator as to time remaining and when time has expired. I am not getting that visual indicator at my end. I'll kindly ask counsel to self-police. Also, I'll ask my colleagues if they are getting the visual indicator. If the red no time remaining indicator comes up, please let me know. Mr. Plum, this is your opportunity to argue. Thank you. May it please the court. Stephen Plum on behalf of the Carl Foundation. This case provides an opportunity for this court to complete the work that it began 14 years ago. It was 2009 when this court issued a landmark ruling in a case of first impression upholding the ability of the Carl Foundation to seek to establish its entitlement to property tax exemptions under Section 23-25E of the Property Tax Code. It was 2016 when this court ruled that the not-for-profit hospital charitable exemption contained in the then newly enacted Section 1586 of the Property Tax Code applied to the Carl Foundation's claims in this litigation. Now, of course, that decision was set aside on jurisdictional grounds, but the reasoning that was employed by this court in the case that has come to be known as Carl II was sound. Now this case returns this court for a third and what I suspect we all hope will be final time to decide whether the Carl Foundation has established its entitlement to exemptions under Section 23-25E and Section 15-86. But unlike the two prior occasions, this time the case is here on a full evidentiary record that was developed over a trial that was reported to be the longest civil trial in Champaign County history. It culminated in a 145-page circuit court decision that included meticulous factual findings that even the appellants don't contend are against the manifest way to the evidence. What that evidence showed and what the circuit court expressly found includes two fundamental findings that guide the disposition of this appeal. The first is that the circuit court repeatedly used the word impressive to describe the extent of the Carl Foundation's charitable activities and the millions of dollars that it spends and the thousands of people that it benefits year after year in furtherance of the Foundation's four distinct charitable purposes. And the evidence was truly impressive. In 115 years since the Supreme Court's seminal decision in the Sisters of the Third Order St. Francis case, establishing a not-for-profit hospital's entitlement to charitable property tax exemptions, there have been plenty of cases that have upheld property tax exemptions for hospitals. But none of them come close to this case in terms of evidence demonstrating everything from the breadth of the hospital's charitable purposes, the range of the hospital's charitable activities in furtherance of those four charitable purposes, the number of patients who received free or discounted care, the number of members of the general public who benefited from the hospital's charitable activities, or the amount of money spent by the hospital in furtherance of those charitable purposes. The second fundamental circuit court ruling is that, as the court put it, the testimony was uncontradicted that the use of the properties was the same from 2004 through 2012. And that's crucial, because in 2012, the Department of Revenue, in accordance with a favorable recommendation from the Champaign County Board of Review, approved property tax exemptions for the very parcels that are the subject of this appeal, as well as other properties owned by the Carl Foundation. And while both the Department of Revenue... Bob, may I interrupt you there and ask, what was the statutory standard for an exemption for those pre-2012 exemptions that were granted? I'm referring, Justice Doherty, to the 2012 applications that were filed after the passage of Public Act 97-688, creating 1586. So the standard that was filed, or that was followed, was the standard in Section 1586. The Carl Foundation... Your reference to your second point, that things were the same, the activities were the same in 2004 to 2012. And what was the year in which an exemption was found, and what was the standard under which it was found? And that's exactly right, because for 2325E, we need to start with the so-called base year where the exemption was found. That was 2012. And that exemption was found pursuant to Section 1586. The Department of Revenue found that the Carl Foundation's qualifying charitable activities actually far exceeded the amount of the estimated property tax that it would have had to pay if its properties were not exempt. So that was the standard that was satisfied for 2012. And under 23-25E, the question that was decided by the Circuit Court is, does 2004 through 2011 satisfy the same standard? Essentially, are there any material differences? So we're applying that statute retroactively. I'm sorry, that standard retroactively. That's correct, pursuant to 23-25E and Section 90, that is 35 ILCS 128-90, which is the retroactivity provisions. And I think what's so important about the 2012 finding and determination by the Department of Revenue that was the predicate for the Carl Foundation's claims in this case is that, you know, even today, neither the Department of Revenue nor the Board of Review claim that they got it wrong in 2012. They correctly determined that the foundation was entitled to an exemption in 2012. Under this court's decision in Carl II, realize it's not binding, but it's persuasive. That decision, in terms of addressing the nature of claims under 23-25E, claimed that the focus is on whether there are any material differences between the base year for which the exemption was found, year 2012, and the year for which exemptions are being sought, year 2004 through 2011. But you couldn't, for example, go back to 1990 because you couldn't say, well, wait, you know, we want to get an exemption for two decades before, because the ball wasn't in the air, right? You're only asking us to reach exemptions for which there were applications or proceedings judicially that had not yet been finally determined. That's exactly right. We're dealing with a closed set. That's exactly right. We filed suit in 2007. By the time of the passage of Public Act 97-688, creating 1586, we were in court with respect to, at that point, it was tax years 2004 through 2009. This was already in play and had been for quite a few years, and so we're not talking about unlimited retroactivity. It's a closed universe, as your Honor pointed out. What effect, then, are we to give the fact that Carl dismissed voluntarily and or had the Department dismiss proceedings before the Department from 2004 through 2008? I think the court would look at that as the Carl Foundation taking seriously this court's admonition in Carl I that we had to make an election of remedies. Recall that when we filed this case originally, no court had ever addressed what 2325E meant. Being cautious lawyers, we filed our administrative exemption applications, and then we also filed suit seeking determinations under 2325E. This court ruled we were allowed to do that under 2325E, but we had to make an election of remedies. Going forward, future property owners could not do it both ways. This court held, since the law was unclear, no one had ever done this before, the ruling got applied prospectively. But we recognized we couldn't proceed administratively with the then pending administrative applications, which at that point were for 2004 through 2008. And we didn't want to. We didn't want to elect that election of remedies. And frankly, what happened, your Honor, is that we first went to the Department of Revenue and said, hey, we want to proceed in court, let's just stay this case so we don't have to deal with this, and let's proceed in court, and the ALJ wouldn't do that. We asked then the circuit judge to join the Department of Revenue from proceeding so that we could proceed in court under 2325E, and the court declined to do that. And so what we did was we worked out a stipulation that allowed us to dismiss the case, the proceedings before the Department of Revenue, for the very purpose of being able to proceed under 2325E in this lawsuit. That was a dismissal that was not on the merits, and it was expressly recognized in that stipulation and the order implementing it. We were free to proceed in court. So what we had is what the department did after we withdrew our applications for 2004 through 2008 was they purported to deny them, which was a little bit gratuitous, but they did what they did. But it really didn't matter because it wasn't a final decision. It wasn't on the merits, and it was understood that the whole point was we were taking advantage of the right which this court said that we had in Carl I to proceed in this case to seek a judicial determination regarding entitlement to exemptions for the year in question. On the point that you made about the activities being the same, if you look back from 2012 to all the years that we're still, we'll call it a ball in the air, where do we fit the fact that there was in that period a merger with the clinic? How is it we can count those activities for years when the clinic was a separate entity? The merger certainly expanded the scope of the Carl Foundation's activities in general, but it wasn't material in terms of the satisfaction of either the statutory or the constitutional criteria for charitable exemption. Whatever that test is, and I think really that's, I think there's a lot of really interesting questions in this appeal. Hope you have fun with it. We have for a long time. And one of those interesting questions- The long time part I will agree with. One of those interesting questions is, you know, what the heck is the constitutional test for exclusive charitable use? What does that mean today? And, you know, is it just a couple of the coarsen factors, as the Supreme Court seemed to indicate in the Oswald case? Is it really none of them, which is what the Department of Revenue held most recently in the American Academy of Pediatrics case that was the subject of a recent motion for leave to file supplemental authority? Or is it all of the coarsen factors, as the circuit court essentially conservatively applied? You know, that's going to be one of the more interesting questions. It's not outcome determinants. I know Oswald only talked about a couple of the factors, but it didn't, you know, look us in the eye and say the other ones are gone. Didn't say that. But it did mention, you know, mention some of the basics, including that charity is a gift that benefits an indefinite number of people. That's crucial. It has to either persuade them to an educational or religious conviction or for their general welfare. Or, alternatively, in some way, the court says, lessen the burdens of government. The court reminded us that exclusive use means primary use of the property. And it said these are the factors that provide the frame of reference. Is it possible that that narrowed focus was related to the facts in that case? That that's what was being litigated? Absolutely not. Because the Oswald case was a facial challenge. There were no facts before the court. The only issue in Oswald, which I was privileged to represent the Ota Health and Hospital Association in that case, in the circuit to the Supreme Court. The only issue in that case was the patient constitutionality of Section 15-86. There were none. It was a purely legal issue. It was not fact specific in any way. So, you know, I don't presume to know for sure what the unanimous Supreme Court meant when they said this is the frame of reference. But I do think that it is certainly a very credible and plausible interpretation that Justice Neville and the court meant what they said. When they identified certain things and said this is the frame of reference. Because, after all, coercion factors were developed under not 15-86, but 15-65. The traditional charitable... But it's the constitutional test, so we don't need to even worry about what the statute says, right? Well, but is the coercion test the constitutional test? Because, you know, 15-65 includes the constitutional requirement of exclusive charitable use, but it adds a statutory requirement that the applicant be an institution of public charity. And 15-86 eliminated that requirement and it substituted for this quantitative analysis of what we call the benefit of the bargain test. That the value of the qualifying activities have to be at least as great as the tax savings that the exemption amplitude obtains. So the cases following, you know, starting with coercion itself, it was kind of schizophrenic in the sense of sometimes they said this was the constitutional test. Sometimes they said the essential attributes of a charitable institution are. Constant references to an institution of public charity. So when you really look at the individual factors, a lot of them do, on their face, relate to ownership. There's overlap for sure, but coercion never told us it was disregarding the other factors. I'm sorry, Oswald never told us it was disregarding. That's right. I mean, I think a reasonable interpretation could go either way. I do think that the Department of Revenue's recent explanation of its understanding in the American Academy of Pediatrics is relevant. I mean, I think that case makes it clear the department only considered the coercion factors with respect to the charitable ownership issue. And not with respect to the charitable use issue. So that may be additional reason to take a more narrow view. But ultimately, the circuit court, to its credit, was very careful and very cautious. And it recognized that there was a plausible interpretation of Oswald that narrowed the factors that really relate to the constitutional test. But it also addressed all of them, just as we did in our brief. And whether it's limited or all of them, the result is the same. The Carle Foundation satisfied those criteria for all of the years in question, 2004 through 2011. There is no material difference between any of those years in 2012. The charitable purposes, the four charitable purposes, were the same. And those purposes included providing medical education to health care practitioners and members of the general public. Circuit court noted in one year, for example, there was something like 9,467 programs benefiting or that were attended by more than 192,000 people. I mean, think about that. That's almost 30 programs a day for each day of the year. That was an important charitable purpose throughout the time frame. The second charitable purpose that also applied throughout the entire time frame was we were conducting groundbreaking translational research that benefited patients broadly. Not just indigent people, all of our patients. And this was an extensive or extensive activities in furtherance of that charitable purpose. This is translational research intended to result in near-term benefits to patients. Dr. Leonard, the chief executive officer of the foundation, talked about, for example, a breakthrough improvement with breast cancer treatment and what a difference that made and how important that was. So those research activities, in one year there was 117 of them at the hospital. That was an important charitable purpose throughout the entire time frame. Certainly, back to the issue of the election of remedies that you were discussing with Justice Doherty. When, after Carl won, you had the opportunity to go back and make that election, how do you address the response that that election should have been just available, those available remedies at the time? That at no point in time could anyone anticipate the passage of future legislation, meaning 1586, so that the election of remedies really should have been limited to either the administrative track or those available at the time to you. How do you address that particular issue? Well, we didn't file property tax exemption applications after Carl won was handed down. So that is for 2009, 10, or 11. Then Public Act 97-688 got enacted, and 1586 is part of that, and we filed an administrative application for 2012. So for tax year 2012, we elected the administrative remedy, but that didn't affect our ability under 2325E to still apply that base year to other years for which we had not elected an administrative remedy and did everything we could to avoid electing an administrative remedy. So 2325E applies to all those other years for which we had preserved our ability to proceed under 2325E in accordance with this court's decision in Carl won. So just to finish the loop on why things were the same from 2004 through 2012, I want to quickly note the two other charitable purposes that were the same and the uses of the property that were the same throughout the entire period. I've mentioned two already. The third is that the Carle Foundation provided a wide range of money-losing activities that benefited the public as a whole. There are a long list of those. Two examples. One, the airlift helicopter. The Carle Foundation has a massive coverage service area. It extends like two-thirds of the way to Kentucky, north almost to Kankakee, out to McLean County, east into Indiana. There's something like 1.4 million people in its service area. Folks come from far away to this world-class healthcare facility, and time is of the essence. The state of Illinois had been funding something called the airlift helicopter. They discontinued that funding. Carle Foundation stepped up. It funded that. It spends a lot of money on that. It's a money-loser, but it's important. It's important. It's oftentimes of the essence a matter of life and death. Another example is the world-class newborn intensive care unit that it provides. It's a huge money-loser, but it's so important. And there's a long list of activities like that, the Echo Clinic that provides important hearing services for children. Carle Foundation chooses to provide these money-losing activities in furtherance of that charitable purpose of benefiting a broad group of people, not just indigent patients. And with respect to the fourth charitable purpose, this is one I think it's important to recognize. With all due respect, I think the appellants often mischaracterize it. The fourth charitable purpose is not to provide charity care. That really defines it too narrowly. It's to provide care to everybody regardless of ability to pay. And that distinction is important because what it means is that it's not just the provision of free or discounted care that matters, but it's the availability of our facility to everybody at all times. We are acting in furtherance of that activity, of that charitable purpose. 24 hours a day, every day of the year. And yes, as the circuit court found, there's an impressive number of folks who have been able to take advantage of the free or discounted care. And most of it is free. A very large percentage of the services under the community care program are free. But that's really, it becomes even more impressive when you consider that's really just the tip of the iceberg in terms of the activities of the foundation in furtherance of that fourth and vitally important charitable purpose. So, you know, at the end of the day, I think when the court, whatever you conclude, is the appropriate constitutional test, I would encourage the court to apply whatever factors you deem apply. By reference to all four of the Carle Foundation's charitable purposes that applied throughout the period in question. My question for you is whether the way you have interpreted the retroactive look back as being the same standard, and maybe this is a question about what the legislature has created. But this seems to ratchet one way that you don't go back and say, hey, relook at this according to a year when we didn't have an exemption, of course. Everything seems to favor granting an exemption, which does seem to go against the normal preference. Is that the way this system works, that any time you may get a no, a no, a no, and then a yes, and then as long as you can compare favorably that yes to the prior no's, you're going to get a retroactive exemption. Well, we have to show that the grounds are comparable. So if someone who's opposing the exemption for the other years wants to say no, this isn't comparable, look, what you're doing, your purpose has changed, or your activities, there's a material difference. And look, we denied your exemption for this year, and this is a lot more like the year where it got denied than the year where it got granted. That's certainly fair game. But here we had a situation, we're dealing with a property owner that had exemptions for decades. 2004 rolls around, and I want to talk a little bit about one of the grounds for the cross appeal. 2004 rolls around and suddenly properties are back on the tax roll. And then, you know, the next time the new law gets passed, it gets applied by the Department of Revenue itself and by the Board of Review, we satisfy the criteria. So, you know, I would submit in this case, applying the exemption for 2004 through 2011, that's entirely consistent with what was universally the case before 2004, but certainly has been the case since 2012 and since then as well. So this is not a situation where we're picking and choosing what's favorable. If that situation arises in the future, challengers are free to say, no, you're not comparable to where it got granted, you're more comparable to where it got denied. So if it's okay with the court, and I do want to try to address one issue with respect to the cross appeal, and that concerns count one of the fourth amended complaint. Perhaps the most striking aspect of this controversy, which started with full fair market value assessments of hospital properties more than 19 years ago, is that this was all a mistake. It's undisputed that the Cunningham Township Assessor did not impose full fair market value assessments on the main hospital property, or on the North Tower, or on the power plant, because she thought the foundation was no longer titled to exemptions, or that there had been some sort of change of use so that it was no longer using its property exclusively for charitable purposes. In fact, it's undisputed that she wasn't trying to terminate the exemptions of those properties. Rather, the assessor mistakenly thought that because there had been some additional construction on the main hospital, the North Tower, since the exemptions were granted, and even though it was still being used for the same hospital purposes, the assessor thought that she was supposed to place a full fair market value assessment on the entire parcels, not just on the new construction, but on everything. She was wrong. But not only was she not required to assess the parcels at their full fair market value, she was prohibited from doing that. She lacked the legal authority to do that. The assessor's unlawful assessment, beginning in 2004, was then perpetuated by the Champaign County Board of Review. So, it mistakenly thought that when they certified the tax rolls for 2004 that included the full fair market value assessments, they had not determined that the foundation was no longer entitled to exemptions. And again, the facts are uncontroverted that they did not intend to terminate the foundation's exemptions. Now, the appellants would shrug all this off as a technicality, but in truth, this implicates the most fundamental principle of Illinois tax law. The Supreme Court in Millennium Park and countless other cases has held that taxes can only be assessed and collected as expressly spelled out by statute. There is no statute anywhere in the property tax code that expressly or even impliedly authorizes the Cunningham Township assessor and the Board of Review to do what they did with respect to the four parcels here. To the contrary, the Supreme Court in Millennium Park held that Section 9-95 of the property tax code expressly prohibits the assessment of exempt property. So, that means that the full fair market value assessments for 2004 through 2011 were unlawful, and so were the property taxes based on them. I see that my time is up and appreciate the 10 minutes that I have reserved for rebuttal. All right. Thank you, Mr. Plum. You will have that rebuttal. Mr. Fletcher, it's my understanding that you'll proceed first with the appellant's rebuttal. Yes, thank you. First, as to the Township assessor's actions in 2004, the Township assessor simply determined that there had been construction since the exemption had not been granted, and so made a determination that plaintiffs should be required to file a new exemption application so the department could determine the current exempt status of the parcel. Mr. Plum is right that there was no, as I understand it, there was no independent determination that the new use was exempt, but the Township assessor believed the department should take a look at it. I would submit that under Section 15-10, an exemption, once granted, only exists insofar as original use justifies it. Under Section 9-160, once that use no longer is in place, the Township assessor can put a value on the role. Otherwise, plaintiffs could tear down a hospital and put up a new food pantry and not have to file a new exemption application. Except that's not what happened. I understand. There was a change in use. There was significant new construction, and the Township assessor believed that the department should take a fresh look. And if the Township assessor was wrong, plaintiff's remedy is to file a new exemption application. That much is clear from Adventure Christian Church. That much is also clear from Riverside, both in which cases held that the taxpayer got their complete remedy through the administrative process. The answer is not to wait five years, file suit, and then claim a refund for the intervening period, which is what plaintiffs did here. That does not fall within 23-25E because plaintiffs cannot meet the comparable grounds requirement. It does not fall within a tax unauthorized at law. I believe the Hobbs v. Slade case I cite makes that clear. The department could have directed this at any time based on substantive grounds. So we're talking about a mere procedural error, not the power of the taxing body to impose the tax. Briefly, in terms of the constitutional standard, I would note that in both Eden and in Corrigan itself, the issue of charitable ownership was not in play. In both of those cases, the only issue presented was one of charitable use, and so the Corrigan factors have to define the constitutional charitable use standard. I agree with Justice Doherty, if I'm understanding this correctly, that Oswald did not address this issue. It was a very narrow facial attack under Midwest positions. The appellate court has rejected plaintiffs' effort to cream down the Corrigan factors. American Academy of Pediatrics actually expressly declined to take a position on this issue. The more fundamental issue is that, regardless of whether the Corrigan factors are in play, plaintiffs cannot meet the constitutional standard of exclusive charitable use, however defined. Mr. Afflon is correct that the Powell Foundation does a lot of good for our community, if you look at it in absolute terms, but fractions have denominators. In 2011, their total expenses were roughly $1.57 billion, with a B. It is very easy to project a big image of charity with a very small portion of resources, and that charity may well deserve some form of subsidy, but it does not comply with the constitutional definition of exclusive charitable use. As far as retroactivity is concerned, I would note that the standard Mr. Afflon is advocating, that these are a continuation of the prior administrative claims, would not give it relief, first because it withdrew its administrative claims before the effective date of the new statute. Perhaps there was a stipulation in place, but my clients were not party to that stipulation. And second, plaintiffs never filed administrative applications in any forum for 2009, 2010, or 2011. So if that's the standard we're applying, plaintiffs' claims for those years should be dismissed outright. I feel that I'm out of time. Thank you for your time. All right. Thank you, counsel. Mr. Grosser, you may proceed. Thank you, Your Honor. Carl has commented several times about how impressed the trial judge said he was, and that is accurate. The trial judge made it clear how impressed he was with what Carl does. I can see Carl out my office window as I sit here, and it is an impressive place. It's a fine hospital. I'm glad it's there. However, this is a tax case. What the judge has, what Section 1586 does is bases what's a charity now on things entirely different than what the Constitution talked about, what Corzine talked about. He's impressed with the various things they do in other places. And there are things beyond what's being done on these four parcels, and these four parcels, what they have to show is charitable. That's what the activities have to be. The record shows they're giving some money to a free clinic. Well, that free clinic is named in the city of Urbana or Cunningham Township. What they've given them is the use of a building that used to be a grocery store, and that's fine. I'm sure it's put to very good use. They have some kind of operation studying the hibernation of bears, but that's in another county. The point is, I think the trial judge was clearly going on the basis of how impressed he was with this operation. Boy, they ought to have an exemption. That's all I had. All right. Thank you, Mr. Rush. You may proceed. Thank you. All of Mr. Kwan's arguments about Section 1586 and the statutory requirements and retroactivity are addressed in our brief. So I'll just touch on a basic point. Carl's arguments that it satisfied the requirements of Section 1586 in terms of filing applications and in terms of the retroactive application of the statute, they depend on rewriting the statute and not following the text as written by the legislature. The legislature said in Section 1586 what an application is, and the legislature said in Section 90 the retroactive extent of Section 1586. It's about applications and department decisions. There's nothing circular about applying the statutory text as written by the legislature. And I want to be clear that I agree with Mr. Fletcher. When I said that the same standards apply in administrative or court actions, what I mean is that if a taxpayer shows up in court with a Section 1586 claim, it has to first show that it met the requirements of Section 1586, just as it would in the administrative proceeding. And as a matter of law, Carl has not met the requirements of Section 1586. We also addressed in our brief Carl's failure to provide evidence that showed that it met the substantive requirements of Section 1586. I rest on our brief for that purpose. Mr. Rush, we know that the legislature took pains to show that this would have some degree of retroactive application because it would apply to applications in process, to balls in the air. That means that they would be applying a standard from 1586 to cases that predated 1586, right? Yes. So wouldn't a judicial application also apply the substantive test of 1586 in that same window of retroactivity? Well, first of all, Section 90 is very specific about which balls in the air Section 1586 applies to, and it doesn't say anything about a pending court claim. No, but it says, and I'll read you subsection 2, all applications for property tax exemptions filed by hospitals, hospital owners, hospital affiliates, or hospital systems on or after the effective date of the act. And then in 3, all applications which were pending as of the date of the act. That's right. And the word application has to be, by fundamental principles of statutory interpretation, the word application has to be read of a piece with the rest of that legislation, which includes Section 1586, which tells us the type of applications that are required, which means applications under Section 15-5, the administrative process. The legislature, when it enacted this statutory scheme, was not trying to create a go-to-court scheme. It specifically created a file an administrative application scheme. The fact that an earlier statute, 23-25E, allows for going to court in certain circumstances, that does not override what the legislature chose to enact in a later statute, which is also more narrow. If there were, as we say in our brief, if there were a conflict between these two statutes, Section 1586 would prevail. Now, on the constitutional issue, I agree, as counsel have stated, the circuit court was impressed with Carl. The circuit court was impressed when Charles Charity Care was more than 1% of its activity. No other court has similarly been impressed. I see that my time is up. We will rest on our briefs. I thank the court for its time. We do ask the court to reverse the exemptions awarded and otherwise affirm circuit court judgment. All right. Thank you, Mr. Rush. Mr. Plum, you have rebuttal. Thank you, Your Honor. First, with respect to Count 1, it's uncontroverted. Mr. Fletcher, in addressing Count 1, didn't dispute nor could it reasonably be disputed that there has to be authority that is expressly spelled out in order for property to be properly assessed and then taxes collected. He points to two statutes, but neither of them expressly spell out the assessor's authority to do what was done here. He refers to Section 9-160, as Justice Doherty alluded to. Section 9-160 addresses the situation where there is some construction that adds value to property. It's not specifically related to exempt property. In that instance, the value of the addition can be assessed. Frankly, I'm dubious whether that applies at all here when the addition is for the same purpose, but it certainly doesn't authorize the full fair market value of the entire property. Even when 9-160 is applicable, it's limited to the value of the improvements. Mr. Fletcher also referred to Section 15-10 as putative authority for the assessor's assessment of the exempt properties. Section 15-10 implements the statutory procedure for once you get an exemption, a non-homestead exemption, you file an annual affidavit. In that annual affidavit, you generally say, I still own the property. There hasn't been any change in ownership, and I'm still using it for the same purposes. If there are exceptions, you spell those out. Under 1586, more information is provided. Section 15-10 says that if the exemption holder fails to file an affidavit, then there is discretion to terminate the exemption. The Cunningham Township, there was no failure to file an affidavit. That's not why the Cunningham Township assessor purported to impose full fair market value assessments on the four parcels. Section 15-10 is an opposite. But really, it underscores the fact that when the General Assembly wanted to give local tax officials the authority to terminate exemptions, they spelled it out. They did that in 15-10 with the failure to file an affidavit. They did that in Section 15-15 of the Property Tax Code. If you fail to provide copies of leases, again, there is discretion to terminate exemptions. That wasn't applicable here. There's 15-25. The Department of Revenue has authority to terminate exemptions for a future year if they think something's no longer entitled to an exemption. That wasn't invoked here. The fact that there are these provisions in the Property Tax Code that spell out when you can terminate existing exemptions just underscores the fact that what was done here was totally without authority. It was, therefore, unlawful. And that gave rise to a classic tax injunction action that was authorized by 2325E because we had previously been determined to be entitled to exemptions for those four properties. And now they were being assessed unlawfully. So we were challenging the unlawful assessment and that comes right within the traditional notion of a tax injunction action. With respect to the interest point that Mr. Grosser raised earlier, I do want to quickly say two things. This is interest on the tax refunds that we believe, via our cross-appeal, that we're entitled to interest. And we were paying these taxes from 2005 through 2012 and we had no refunds paid until, what was it, 2019? Something like that. We're entitled to interest first under Section 23-20, which expressly authorizes interest on tax refunds. It provides express statutory authorization. It's not limited to tax objection proceedings. It's the code section that's immediately before what this lawsuit was brought pursuant to. That's 2325E. And the Evangelical Hospitals case, another appellate court decision, this went out of the first district, expressly held the 23-20 and awarded interest under 23-20 in a tax injunction action. So that's one basis for interest on the refunds. And the second ground is the Shell Oil case. Mr. Grosser, I think, misspoke when he characterized Shell Oil as saying that there were no interests available unless there's statutory authorization. The holding was exactly the opposite. They expressly authorized the recovery of pre-judgmental interest, quote, in the absence of statutory authorization. That's at 95 Illinois 2nd and I-47. So that's the second independent basis for recovery of interest, which basically just says it's an equitable ground. To the extent that the taxing authorities themselves earned interest on the taxes that we shouldn't have had to pay, they need to give us the interest because they were not entitled to the interest anymore than they were entitled to the taxes. If it's an equitable ground, can't we consider the equitable implications of requiring the taxing bodies to repay taxes paid because of an exemption standard that was actually adopted later? Equitable from the tax body point of view. The exemptions have been challenged from the assessments have been challenged from the very beginning. And the interest was, and the taxing bodies understood that their ability to retain the taxes was questionable, was certainly being challenged. And the evidence showed that at least some of the taxing districts set the money aside. And so all we're saying is they're not entitled to that interest, which they weren't spending the interest. They weren't spending the taxes. That's all that we're seeking equitably. And I would submit it's perfectly equitable. It's not a situation where it's, like, expended. We're seeking interest under the equitable ground for the monies that were set aside. Councilor, I know you've indicated that you feel that Section 2320 should not be limited to what I'll call protest payments or payments made under protest. I guess I just want to confirm the record because the trial court did make the finding that there was insufficient evidence as to whether the plaintiff had paid the taxes under protest or even ask if a protest fund was established. Is there anything in the record to the contrary of the trial court's finding to suggest that Carl did request at some point a protest fund be established or that the payments were being made under protest? No, Your Honor, we did not, and we didn't because you never need to file pay taxes under protest when the issue is exemption. The primary purpose of a payment under protest doesn't have anything to do with interest. It's to avoid the invocation of the Voluntary Payment Doctrine. That requirement of paying under protest does not apply to instances where the property in question is exempt. And, you know, there's no longer a protest fund. The statute out of space says if the monies aren't available for the payment of the interest out of the protest fund, it comes from other sources. So that's really, well, factually, as Your Honor has indicated, the trial court was correct. The court's ruling was based on a misunderstanding of the law, namely that there is no requirement of payment under protest with respect to exempt properties under Section 2320 or anywhere else in the property tax code. Another place where you'll find that referenced in the code is in Section 23-5 of the property tax code. That refers to certain instances where if you want to challenge evaluation, you pay the taxes under protest. That doesn't apply to exempt properties. So it's really a non-issue with respect to exempt properties. The last thing I'd like to say in my limited time remaining, I do want to say a few words about the applicability of Section 23-25e. The appellants are stressing application, application, application. They're reading it narrowly. They're saying application. You can tell from 1586 that application is limited to the administrative application that's pursuant to 1586. Section 1586 is no different than any other non-homestead property tax exemption. Under Section 15-5, which is the mechanism for seeking any kind of non-homestead application, it references the filing of an application in the first instance. Section 1586 references 15-5. So it's in the first instance you file the administrative application, and we did that for 2012. And that's no different than any other kind of non-homestead exemption. So, for example, the general charitable exemption in 15-65, by the way, that references application, and there are regulations that specifically apply, have forms for the different sort of property tax exemptions. P-Tax 300. I think your time has expired, Mr. Plumb. Thank you. Thank you, Mr. Plumb. Thank you to all counsel. The arguments this morning have been excellent. The court will take the matter under advisement. The court now stands in recess.